UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**JEFFREY GOLDHOFF,**

    **Plaintiff,**

v.                                          Case No: 5:22-cv-324-PRL

**MAXENE SAUNDERS,**

    **Defendant.**

_____

## ORDER

This consent case is before the Court for consideration of Plaintiff Jeffrey Goldhoff's motion for summary judgment regarding his state law claim for unjust enrichment. (Doc. 25). Defendant Maxene Saunders has responded in opposition, and Plaintiff has filed a reply. (Docs. 26 & 27). Because there is a genuine dispute regarding material facts precluding summary judgment, Plaintiff's motion is due to be denied.

**I.**     **Background**

This action arises out of a family inheritance dispute between Plaintiff Jeffrey Goldhoff, a resident of Missouri, and Defendant Maxene Saunders, a resident of Florida. Maxene Saunders and Jeffrey Goldhoff are siblings and are the natural children of Bertram Goldfhoff.[1] The action is brought pursuant to diversity jurisdiction under 28 U.S.C. § 1332. The complaint establishes that the amount in controversy is at least $238,987.04. (Doc. 1).

Bertram Goldhoff died in Ohio on December 29, 2018. Maxene contends that, in the

---

[1] For the sake of clarity and considering the parties' family relationships, the Court will refer to Plaintiff Jeffrey Goldhoff as "Jeffrey," Defendant Maxene Saunders as "Maxene," and decedent Bertram Goldhoff as "Goldhoff," or "decedent."

years prior to her father's death and as his health declined, she increased her efforts to visit him and to help him in his home, sometimes traveling as often as six times a year. In late 2018, she made several trips from her home in Florida to visit her father due to his suffering complications from a fall, hospitalization, and ultimately needing hospice care leading up to his death on December 29, 2018.

Following Goldhoff's death, Maxene actively managed her father's estate, home, and finances. Jeffrey does not dispute that he agreed to Maxene managing their father's financial accounts and the estate. Between her father's death in late 2018 and during the spring and summer of 2019, Maxene was engaged in numerous efforts to manage her father's home and estate, including addressing water damage to his home, distributing his personal property, managing repairs and the sale of the home, and managing his estate and finances. Maxene states that she did so "at the loss of [her] job and [her] health." (Doc. 26-1 at 2).

As part of this process, Maxene notified Jeffrey that she had been successful in having USB bank distribute checks as a payout from one of the decedent's accounts, and that each of them would receive a check for $153,503.49. Later, Maxene also obtained similar substantial checks from First Financial Bank and Huntington Bank in equal amounts payable to each sibling.

At this point, the parties' versions of the facts diverge. In her declaration, Maxene states that she directed certain assets from the estate be liquidated and divided into equal checks and that she provided Jeffrey with the checks representing his half of the proceeds from the relevant accounts. (Doc. 26-1). According to Maxene, she distributed those assets equally to herself and her brother. She claims that he voluntarily endorsed and sent certain checks back to her. Although he endorsed the checks that he sent to her, she states it was not done at

her instruction. (Doc. 26-1 at 1). Maxene states that he sent the checks to her voluntarily. (Doc. 26-1 at 2). It is undisputed that Jeffrey did not include any written instructions or restrictive endorsements on the checks when he returned the endorsed checks to Maxene.

Maxene explains, however, that she had previously "expressed her disappointment" to Jeffrey that he was "getting half" of their father's estate, despite her "spending the last four years taking care of him as he died, and managing his affairs after he died," at the loss of her job and her health. (Doc. 26-1 at 2). Maxene states that she was never instructed by Jeffrey that the money he gave her "would have to be paid back to him." (Doc 26-1 at 2). Maxene states that they both knew that Jeffrey had given the money to her voluntarily and unconditionally. Maxene asserts that, as far as she was aware, the funds were given to her voluntarily "in light of the years she spent seeing to the needs of the parties' late father." (Doc. 26 at 13.)

As set forth in his pleadings and declaration, Jeffrey presents a different version of the facts. Jeffrey maintains that he "temporarily entrusted" the funds to his sister. (Doc. 25-1). Jeffrey states that "Maxene suggested that I send my inheritance to her, that she would hold the money, and return it to me when I requested that she do so." (Doc. 25-1 at 2). Jeffrey states that Maxene told him that, "despite having a settlement agreement in my divorce proceeding, if my ex-wife's family found out about my inheritance, they would come after it, and that they likely had access to my bank accounts." (Doc. 25-1 at 2-3).

Jeffrey states that he endorsed the checks as requested by Maxene and sent them to her. He further states that they would speak periodically and she would confirm the amount she was holding for him. (Doc. 25-1 at 3). Eventually, Jeffrey felt less comfortable with Maxene holding his money and had his attorney contact her about the amount. Jeffrey

ultimately pursued this action and contends that the amount of his checks that she retained totals $238,987.04. (Doc. 25-1 at 5). In response to Jeffrey's requests for admission, Maxene admitted that she received endorsed checks from Jeffrey totaling no less than $238,987.04 and deposited them in her bank account. (Doc. 25-2 at 2). Maxene also admitted that prior to receiving the funds, they belonged to Jeffrey and that she accepted them and acknowledged receipt. (Doc. 25-2 at 2).

It appears to be undisputed that, at some point, the parties agreed that Maxene would receive 70% of the proceeds from the sale of their father's home while Jeffrey would receive the remaining 30%. While Jeffrey does not demand payment to compensate him for that specific unequal distribution as part of his claims here, he does argue that the unequal distribution is relevant to whether the circumstances are such that it would be inequitable for Maxene to retain the benefit of the endorsed checks at issue in this case. (Doc. 25 at 11).

As he explains in his affidavit, Jeffrey initiated litigation in Missouri, but the case was dismissed for lack of personal jurisdiction over Maxene. On July 18, 2022, Jeffrey initiated this action alleging the following claims: (1) unjust enrichment; and (2) breach of contract. (Doc. 1). Subsequently, Jeffrey filed a motion for summary judgment as to only Count I of the complaint alleging unjust enrichment. (Doc. 25). Maxene responded in opposition, and Jeffrey filed a reply. (Docs. 26 & 27). The motion for summary judgment is ripe for adjudication.

## II. Legal Standards

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries her burden by showing that there is an absence of

evidence supporting the non-movant's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

### III.     Discussion

Plaintiff Jeffrey Goldhoff has moved for summary judgment solely on his claim for unjust enrichment. Neither party disputes that Florida law applies to the claims in this case.

Under Florida law, a claim for unjust enrichment is an equitable claim based on a legal fiction that implies a contract as a matter of law, despite that the parties to such an implied contract never indicated by deed or word that an agreement existed between them. *Tooltrend, Inc. v. CMT Utensili*, SRL, 198 F.3d 802, 805 (11th. Cir.1999). To prevail on an unjust enrichment claim, a plaintiff must establish that (1) the plaintiff conferred a benefit on the

defendant; (2) the defendant appreciated the benefit; (3) the defendant voluntarily accepted and retained the benefit; and (4) the circumstances make it unjust for the defendant to retain the benefit without paying the plaintiff. *Pincus v. Am. Traffic Sols., Inc.*, 333 So. 3d 1095, 1097 (Fla. 2022) (*citing Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 (Fla. 2004)). Unjust enrichment only applies if there is no remedy under contract law, meaning there is no express contract agreed upon by both parties. *Butler v. Trizec Props., Inc.*, 545 So.2d 710, 711 (Fla. 2d DCA 1988).

Here, it appears that there is no dispute that Jeffrey conferred a benefit on Maxene in the form of the endorsed checks, and that Maxene appreciated, accepted, and retained the benefit. The parties do not dispute that the benefit was the total of the checks from USB and First Financial in the total amount of $238,987.04. Indeed, Maxene concedes that she used the funds that she believed were given to her by Jeffrey for her "normal living expenses," and continued to operate under the belief that she had been given the money by her brother because she had no instructions to the contrary. Maxene contends that the parties had no communication on the matter between June of 2019 until June of 2021.

Thus, there is no dispute regarding the first three elements of the unjust enrichment claim. The parties disagree, however, regarding whether the final element has been established, i.e., whether circumstances make it unjust for Maxene to retain the benefit without paying Jeffrey. In support of his motion, Jeffrey contends that the facts of this case establish a claim for unjust enrichment as a matter of law. Jeffrey contends that liability is determined by principles of equity and justice, and that the intent of the parties is immaterial, citing *14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 881 (Fla. Dist. Ct. App. 2010) (affirming judgment on unjust enrichment claim regarding leasehold

improvements to retail space in a retail shopping mall). Jeffrey points to the unequal distribution of the inheritance funds and proceeds of the sale of their father's home to establish that "as a matter of law, the circumstances are such that it would be inequitable for Defendant not to repay the $238,987.04 benefit." (Doc. 27 at 5-6).

Meanwhile, Maxene disputes that circumstances make it unjust for her to retain the benefit without paying Jeffrey. Supported by her declaration, she contends that Jeffrey gave her the disputed funds voluntarily without any instructions or condition that the money was being given to her temporarily or to hold on his behalf. Maxene further states that Jeffrey gave her the funds only after she lamented the unfairness that the estate would be split equally, despite Maxene making substantial efforts caring for the decedent and managing his affairs while Jeffrey was absent. In her brief, Maxene thus suggests that Jeffrey gave her the funds "out of guilt, remorse, or some higher epiphany," and did so voluntarily, with no instructions, restrictive endorsements, or other conditions. (Doc. 26 at 10).

In further support of her position, Maxene contends that Jeffrey's blank endorsement on the checks he sent her (as opposed to a restrictive endorsement) is evidence that the funds were given to her without conditions, citing Fla. Stat. § 673.2061, § 673.2051 and *Sykes Corp. v. E. Metal Supply, Inc.*, 659 So. 2d 475, 477 (Fla. 4th DCA 1995) (observing that "a restrictive endorsement has a legal effect that is entirely different than that of a blank endorsement."). Maxene contends that she was given no instructions by Jeffrey regarding "holding" the money on his behalf, and thus treated the money as her own funds and used them for her normal living expenses. Maxene suggests that, under the circumstances, her benefiting from the funds was reasonable and equitable because she had been unemployed since 2018 and had spent considerable time and energy taking care of her father, his home, estate, and managing his

affairs, "all the while at the loss of my job and my health." (Doc. 26-1 at 2). Maxene states that, for nearly two years, Jeffrey made no demand or communication to suggest that the funds were given to her to hold temporarily. (Doc. 26-1 at 3).

Notably, neither party has identified any similar cases analyzing the final element of an unjust enrichment claim in the context of a dispute regarding whether a portion of an inheritance was given to another beneficiary. Rather, the cases cited by the parties generally involve unpaid contractors or improvements to property. *See, e.g., Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So. 2d 710, 712 (Fla. 2d DCA 1988) (reversing trial court's summary judgment on unjust enrichment claim and finding that material issue of fact existed regarding property owner's benefitting from the renovation of an unimproved area to finished office space). Indeed, unjust enrichment claims are often asserted in the context of improvements to property or benefits conferred related to real estate. *See, e.g., Jackson-Jester v. Aziz*, 48 So. 3d 88, 92 (Fla. 2d DCA 2010) (addressing unjust enrichment claim in the context of property improvements).

There is authority, however, for unjust enrichment claims in contexts more similar to the instant case. In *Duncan v. Kasim, Inc.*, 810 So. 2d 968 (Fla. 5th DCA 2002), the court considered a dispute arising from a management agreement to operate a beverage-lounge in a Super 8 Lodge in Daytona Beach. The plaintiff undertook the management of the lounge, made improvements to the property, and ultimately placed her personal property on the premises. *Id.* at 969. When a dispute arose, defendant denied plaintiff access to the premises and appropriated plaintiff's property. *Id.* at 969-70. After the trial court granted summary judgment upon the finding that plaintiff had no viable claim against defendant, plaintiff appealed. *Id*. at 969. The court reversed summary judgment in part and noted that allegations

that the defendant had sold or converted plaintiff's personal property, while knowing the items belonged to her and accepted the benefits of the sale could support an unjust enrichment claim. *Id.* at 971. The court reasoned that the viability of the unjust enrichment claim would depend on the circumstances of the case and any agreements between the parties. *Id.*

Further, while there is scant legal precedent specifically interpreting the final element of a claim for unjust enrichment, case law suggests that whether there has been an exchange or payment for services is a relevant factor in determining whether it is unjust for the defendant to retain the benefit. *See Murphy v. Pankauski*, 357 So. 3d 149, 152 (Fla. 4th DCA 2023). In *Murphy*, a former client sued former counsel for legal malpractice and unjust enrichment arising from the defendants' representation of the client. On appeal, the court affirmed the dismissal of the claim for unjust enrichment related to legal fees paid by the client because the complaint failed to allege whether counsel was unjustly enriched or whether the fees were earned or unearned. *Id.* at 152. The court reasoned that an unjust enrichment claim "'cannot exist where payment has been made for the benefit conferred.'" *Id.*, citing *Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., Inc.*, 651 So. 2d 190, 190 (Fla. 4th DCA 1995).

Upon consideration, the Court concludes here that issues of fact preclude summary judgment regarding whether circumstances make it unjust for Maxene to retain the benefit of the endorsed checks without paying Jeffrey. Both the overall circumstances and Maxene's declaration establish those issues of fact because it is disputed whether the funds were given to Maxene to hold temporarily or whether they were a gift or compensation for her doing the work of taking care of the decedent and his affairs. Maxene has proffered facts supporting her affirmative defenses that the funds were a voluntary gift or adequate consideration for her efforts. (Doc. 6). Indeed, Maxene specifically alleged the affirmative defenses that the money

was provided to her voluntarily and unconditionally, and that the funds were adequate compensation for her efforts caring for the parties' father and managing his estate (Doc. 6 at 4-8). As explained above, Maxene's declaration supports those defenses. Accordingly, the Court concludes that issues of fact preclude summary judgment in favor of Jeffrey. *See Duncan*, 810 So. 2d at 971 (reversing summary judgment in part and reasoning "[the plaintiff] may be entitled to an unjust enrichment claim depending on the circumstances of the case and agreements of the parties, all of which have not been defined or determined at this point in the case.").

### IV. Conclusion

Upon due consideration and for the reasons explained above, there is a genuine dispute as to material facts precluding summary judgment as to Plaintiff Jeffrey Goldhoff's claim for unjust enrichment. Accordingly, the motion for summary judgment (Doc. 25) is **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on August 2, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties